IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Kim L. Tolbert, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) Case No. 17 CV 50137 |
| v. | ) |
| | ) Magistrate Judge Iain D. Johnston |
| Nancy A. Berryhill, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| *Defendant*. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kim Tolbert brings this action under 42 U.S.C. § 405(g), seeking a remand of the decision denying her social security disability benefits. For the reasons set forth below, the decision is remanded.

### I. BACKGROUND[1]

On February 6, 2013, Plaintiff filed applications for disability insurance benefits and supplemental security income. R. 194-206. Plaintiff alleged a disability beginning on October 31, 2012, because of arthritis, hypertension, right carpal tunnel and asthma. R. 82. Plaintiff reported that she stopped working as a food service worker on her alleged onset date due to these impairments. R. 242.

In November 2012, Plaintiff had carpal tunnel release surgery on her right wrist followed by physical therapy. R. 52, 375, 378. In January 2013, Plaintiff had carpal tunnel release surgery on her left wrist. R. 52, 373. Despite both surgeries,

---

[1] The following facts are only an overview of the medical evidence provided in the administrative record.

Plaintiff still complained of pain in both hands. R. 259 (March 2013: pain in her right hand every day); R. 420-21 (May 2013: intermittent pain and cramping in left wrist and hand). However, Plaintiff had not sought any recent medical treatment for her hands. R. 74-75.

Shortly after the surgery on her left wrist, Plaintiff began complaining of back pain radiating to her left leg. R. 52, 440. Plaintiff was diagnosed with sciatica. R. 442. In November 2013, Plaintiff reported limited mobility and range of motion and the use of a cane due to loss of balance. R. 284; *see also* R. 56. Plaintiff's medical records through February 2015 revealed that she continued to report back pain despite taking several medications to relieve the pain. R. 490-517, 554-58. In February 2015, she was also prescribed a cane to replace the worn-out cane she had been using since 2013. R. 45, 556-58.

Beginning in July 2014, Plaintiff also sought treatment for foot swelling and pain in her feet and was prescribed compression stockings. R. 507, 502. The compression stockings in addition to elevating her feet helped reduce the swelling and edema. R. 41-42, 493, 500 ("trace edema" with the use of compression stockings); R. 490, 496, 557, 559 (no edema). Nevertheless, Plaintiff's doctors were unable to determine the cause of her foot pain and in January 2015, Plaintiff still complained of "shooting pain going from the ankles to the knees." R. 559.

On March 12, 2015, Plaintiff, represented by an attorney, testified at a hearing before an Administrative Law Judge (ALJ). R. 29-81. The ALJ also heard testimony

from Dr. Ronald Semerdjian, a medical expert specializing in internal medicine, and Linda Gels, a vocational expert ("VE"). R. 141.

Plaintiff was then 52 years old. Plaintiff's testimony at the hearing focused on her lower back pain, hand pain and foot swelling. Plaintiff testified that she was able to grocery shop once a month, do laundry and clean with the help of her son, who lived with her, or her aunt. R. 35-37, 45. Plaintiff testified that she walked around the house, but did not otherwise leave unless going to the doctor, grocery store or her mother's house. R. 42-43. Plaintiff testified that the medications she took made her drowsy. R. 69-70. She specifically identified Gabapentin, which she took for her back and foot pain, and Methocarbamol and Nebulatone, which she took for her arthritis. R. 40, 50, 68-70.

As for Plaintiff's hands, she complained that despite having surgery, her carpal tunnel still caused weakness and numbness in her hands. R. 45-46. Plaintiff needed to take breaks when using her hands due to pain or numbness with prolonged use. R. 46, 49.

The ALJ ultimately denied Plaintiff's request for benefits. R. 12-28. The ALJ found that Plaintiff had the following severe impairments: morbid obesity, degenerative disc disease and facet arthritis of the lumbar spine, history of bilateral carpal tunnel syndrome, and lower extremity edema. R. 14. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. R. 15. The ALJ concluded that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work with certain restrictions. R. 16.

## II. STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19-20 (N.D. Ill. Oct. 29, 2014).

## III. DISCUSSION

On appeal, Plaintiff argues that reversal or remand is appropriate for the following reasons: (1) the RFC failed to account for her need for a cane; (2) the ALJ improperly addressed her credibility; and (3) the VE failed to provide the sources or supporting data she relied on to determine that substantial jobs exist that Plaintiff can perform. Although the issues relating to Plaintiff's use of a cane and the ALJ's credibility determination would not justify a remand by themselves, the Court believes a remand is necessary because the ALJ's determination at step five is not supported by substantial evidence. For this reason, the Court will address Plaintiff's claims about the VE's testimony first.

### A. VE Testimony

The ALJ found that Plaintiff was able to perform light work with certain restrictions. The ALJ further found that such restrictions did "not significantly erode the occupational base of light jobs." R. 20. The VE did not specifically make a finding about the occupational base of light jobs. The VE testified that considering Plaintiff's RFC there were jobs that will continue to remain. R. 61. This Court is not concerned with the ALJ's improper statement about the occupational base of light jobs because she proceeded to discuss the VE's testimony about the specific unskilled, light jobs that Plaintiff would still be able to perform. What is more concerning is the ALJ's reliance on the VE's testimony about the availability of those jobs.

At step five, the ALJ determines whether an individual can "make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). "It is the Commissioner's burden at Step 5 to establish the existence of a significant number of jobs that the claimant can perform." *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004); *see* 20 C.F.R. § 404.1560(c)(2) ("[W]e are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors."). ALJs often rely on vocational experts to make a determination at step five. *See Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). However, "[i]f the basis of the vocational expert's conclusions is questioned at the hearing . . . then the ALJ should make an inquiry . . . to find out whether the purported expert's conclusions are reliable." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002); *see also McKinnie*, 368 F.3d at 911 ("A vocational expert is 'free to give a bottom line,' but the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions.") (citing *Donahue*, 279 F.3d at 446).

At the hearing, the VE identified three specific unskilled, light jobs that Plaintiff could perform: cleaner/housekeeper, cafeteria attendant and cashier. R. 62-63. The VE also provided the number of jobs available statewide and nationally for each occupation. R. 62-63.[2] When questioned by the ALJ, the VE testified that she determined the number of jobs available for a given Dictionary of Occupational

---

[2] Cleaner/housekeeper: 150,000 nationally and 5,000 statewide; cafeteria attendant: 60,000 nationally and 2,500 statewide; and cashier: 800,000 nationally and 35,000 statewide.

Titles ("DOT") code by using the Occupational Employment Statistics ("OES") published by the Bureau of Labor Statistics in May 2014. R. 66, 78. The VE acknowledged that the OES reported job numbers by broad Standard Occupational Classification ("SOC") codes rather than narrower DOT codes.[3] However, the VE's only explanation about the methodology she used to extract job numbers from the OES reports was that she used her professional experience to determine what would be "representative" of a specific DOT code. R. 66. The VE did not describe any precise method she used to determine her job numbers from the Bureau of Labor Statistics or explain how she was able to determine what would be "representative" of a specific DOT code.

Both before and after the hearing, Plaintiff's counsel requested the data sources the VE relied upon for her job numbers. To be clear, Plaintiff was not challenging the VE's qualifications as an expert witness. She was specifically asking for the sources or supporting data the VE used to determine that substantial jobs existed that Plaintiff could perform.

The ALJ denied this request and instead only allowed counsel to question the VE at the hearing. R. 22-23, 80. The ALJ reasoned that the VE's experience as a

---

[3] *See Voigt v. Colvin*, 781 F.3d 871, 879 (7th Cir. 2015) ("'There is no official source of number of jobs for each job classification in the Dictionary of Occupational Titles, and while there are unofficial estimates of jobs in some categories, the vocational experts do not in general, and the vocational expert in this case did not, indicate what those data sources are or vouch for their accuracy. And many of them estimate the number of jobs of a type the applicant for benefits can perform by the unacceptably crude method of dividing the number of jobs in some large category (which may be the only available data) by the number of job classifications in the category, even though there is no basis for assuming' that there is the same number of jobs in each narrow category.") (citing *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014)).

certified vocational rehabilitation consultant since 1977 and as an expert witness in this area for many years was sufficient for her to testify about the jobs Plaintiff could perform and the number of those jobs available. R. 20. The ALJ also cited *Donahue*, 279 F.3d at 446, to find that producing the sources of information the VE relied on was unnecessary where Plaintiff's counsel was afforded the opportunity to cross-examine the VE at the hearing. R. 22.

The Court finds this reasoning insufficient to deny counsel's request. In some circumstances, cross-examination of an expert may render production of the VE's sources unnecessary. However, the VE in this case never fully explained her methodology to determine the number of jobs when comparing DOT and SOC codes. *See Chavez v. Berryhill*, 895 F.3d 962, 969 (7th Cir. 2018) (noting the "information loss" that results from the "many-to-one mapping," between the DOT titles and SOC codes, which results in an estimate of existing jobs that "may deviate significantly from the actual number of existing positions") (citing *Brault v. SSA*, 683 F.3d 443, 447 n.4 (2d Cir. 2012)). Additionally, denying counsel the ability to review the VE's sources prevented him from properly cross-examining the VE to determine whether her methodology was reliable. *See Djuric v. Berryhill*, No. 17-CV-832, 2018 U.S. Dist. LEXIS 168840, at *10 (E.D. Wis. Sep. 28, 2018) (remanding where the ALJ failed to issue a subpoena of the VE's documents relied on to determine job numbers noting that the "available on demand" rule is to facilitate cross-examination); *see also Gracz v. Berryhill*, No. 16 cv 4099, 2017 U.S. Dist. LEXIS 55683, at *16-17 (N.D. Ill. Apr. 12, 2017) (remanding where the VE's only support for his job

numbers was the DOT and Bureau of Labor Statistics and the ALJ accepted these numbers without providing the VE's backup documentation to plaintiff's counsel).

This case is strikingly similar to the facts in *Brown v. Berryhill*, No. 16 C 9957, 2017 U.S. Dist. LEXIS 188167 (N.D. Ill. Nov. 14, 2017). In *Brown*, the ALJ denied claimant's counsel's request for the VE's documents and data used to determine her job numbers. *Id.* The court found the ALJ's reasons for denying the underlying documents insufficient[4] and remanded so that the ALJ could order the VE to produce substantiation of her testimony. *Id.* at *7-8. The court specifically found that claimant's counsel was unable to cross-examine the VE about the basis for her job numbers without production of the information revealing her underlying methodology. *Id.*

The failure to provide the VE's underlying documents here similarly prevented counsel from properly cross-examining the VE about her methodology. Without further explanation about the VE's methodology, there was not enough information for the ALJ to determine whether the VE's testimony about the job numbers was reliable. *See Chavez*, 895 F.3d at 968 (stating that job-numbers estimates must be based on reliable methods). The VE's reliance on personal experience alone did not provide substantial evidence to support her job numbers or the ALJ's determination that Plaintiff could perform other work. *See Smith v. Astrue*, No. 09 C 2392, 2010 U.S. Dist. LEXIS 91764, at *51 (N.D. Ill. Sep. 1, 2010)

---

[4] The ALJ's reasons included that: (1) the Agency takes administrative notice of jobs data from various governmental publications; (2) plaintiff's counsel had the opportunity to cross-examine the VE at the hearing; (3) there was a privacy concern with turning over the VE's client's information; and (4) the information about the jobs was available online. *Id.* at 4-5.

- 9 -

(remanding where the VE relied solely on his personal experience to justify his job estimates without providing some specificity concerning the facts, figures or other data that formed the basis of his testimony); *Lacy v. Astrue*, No. 11 C 1556, 2012 U.S. Dist. LEXIS 144499, at *36 (N.D. Ill. Oct. 4, 2012) ("[M]erely revealing how long a VE has been employed does not show 'whether the purported expert's conclusions are reliable' on the specific issue challenged by the claimant.") (quoting *McKinnie*, 368 F.3d at 911).

This is not a case in which the ALJ was unaware of counsel's concerns about the VE's testimony. *Cf. Donahue*, 279 F.3d at 446 ("When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion."). Plaintiff's counsel raised the issue in both a pre-hearing and a post-hearing brief.

Without further explanation or documentation, the Court is unable to determine if the evidence supports a finding that the number of jobs Plaintiff can perform in the national economy are significant. Accordingly, upon remand, the ALJ should order the VE to produce the information she relied on in determining her job numbers so that the ALJ may consider these sources when evaluating whether the VE's methodology and conclusions are reliable. Although the Court does not find that Plaintiff's remaining issues would justify a remand on their own, the Court will discuss them so they may be properly addressed.

## B. RFC

A claimant's RFC is the maximum work that she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1). "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 U.S. Dist. LEXIS 12962, at *40 (N.D. Ill. Feb. 2, 2012). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p at *19, 1996 SSR LEXIS 6.

Here, the ALJ found that Plaintiff did not require a cane for ambulation to perform light work, and as a result, Plaintiff could stand or walk for six hours out of an eight-hour workday. R. 19; *see* SSR 83-10, 1983 SSR LEXIS 30 at *14. The ALJ relied on Dr. Semerdjian's testimony that there was no continuing medical reason for Plaintiff's use of a cane, noting that Plaintiff's edema responded to treatment and she did not otherwise have reduced sensation, reduced muscle tone or weakness. R. 15, 19. The ALJ also noted that "instead the claimant appears to use a cane by her own choice, having been prescribed its use on her own request." R. 19.

The parties do not dispute that Plaintiff was not prescribed a cane until 2015, when she requested one because her cane had worn out. R. 556. Nevertheless, Plaintiff had been using a cane since 2013. The Seventh Circuit has made it clear that "the fact that an individual uses a cane not prescribed by a doctor is not

probative of her need for the cane in the first place." *Eakin v. Astrue*, 432 F. App'x 607, 613 (7th Cir. 2011) (citing *Terry v. Astrue*, 580 F.3d 471, 477-78 (7th Cir. 2009) (finding that the lack of a prescription for a cane was not on its own enough to discredit testimony regarding pain)).

In her disability reports and medical records, Plaintiff reported the need for a cane due to loss of balance and unsteady gait. R. 284, 554. At the hearing, Plaintiff explained that she needed it for her back and left leg pain, which this Court assumes caused her unsteady gait. R. 56. Additionally, during her functional capacity evaluation in 2014, physical therapist Dr. Matthew Davidson reported Plaintiff's use of a cane for "safety/ability with mildly/moderately abnormal gait pattern." R. 482. Dr. Davidson further reported that Plaintiff ambulated into the clinic with a "trendelenburg/antalgic pattern on the left with very increased trunk sway" and used a cane to "unload her left lower extremity." R. 482.

Despite this opinion being consistent with Plaintiff's reports of back and left leg pain, the ALJ discredited Plaintiff's need for a cane altogether. *Cf. Robert D. v. Berryhill*, No. 2:17-cv-02107, 2018 U.S. Dist. LEXIS 163050, at *5 (C.D. Ill. Aug. 24, 2018) (finding that the ALJ properly discounted plaintiff's need for a cane where no physician found the cane medically necessary and instead repeatedly found that he had a normal gait and was able to walk 50 feet without assistance). The ALJ largely questioned the results of Plaintiff's functional capacity evaluation because of Plaintiff's self-limiting behavior in which she refused to stand much, leaned on the wall, took frequent breaks and demonstrated only mild limitations in her left lower

extremity. R. 17, 19. However, the ALJ failed to address Dr. Davidson's explanation that Plaintiff's self-limiting behaviors due to pain only affected his values for stair climbing, pull forces and low-level activities. R. 475.

The Commissioner points out that Plaintiff testified that she needed a cane for her back, but also stated she was having problems with her leg. See R. 56. The Commissioner seems to be arguing that Plaintiff was contradicting herself. However, throughout Plaintiff's medical records, the two impairments are related. *See, e.g.*, R. 502, 554, 559-60 (2015 progress notes indicating that numbness/pain in feet may be related to back problems). Therefore, Plaintiff's explanation is supported by her medical records.

The ALJ then notes Plaintiff's extreme obesity, with a body mass index of 45.77, stating that she has considered the cumulative effects in assessing Plaintiff's RFC as required by Social Security Ruling 02-1p. R. 16. SSR 02-1p, 2002 SSR LEXIS 1, at *2-3 (stating that an ALJ should consider the effects of obesity together with the underlying impairments and when assessing an individual's RFC). Other than a general statement about obesity, nothing else in the ALJ's opinion suggests that she truly considered Plaintiff's obesity on her ability to stand and walk with or without a cane. *See Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014) (explaining the cumulative effects of obesity and other impairments on walking).

This is problematic because Plaintiff's need for a cane directly relates to her ability to perform light work. On remand, the ALJ should thoroughly examine Plaintiff's need for a cane and how it will affect her ability to perform other work so

that the VE may properly determine whether jobs exist in significant numbers in the national economy that Plaintiff can perform.[5]

## C. Credibility

An ALJ's credibility determination should be reversed only if it is "patently wrong." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015). At the same time, the Seventh Circuit has stated that a credibility determination may be reversed if the ALJ "fail[s] to adequately explain his or her credibility finding by discussing specific reasons supported by the record." *Id.*; *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (stating that a credibility finding "must be specific enough to enable the claimant and a reviewing body to understand the reasoning").

In this case, the ALJ discounted Plaintiff's testimony about the severity of her symptoms. In light of this Court's remand on other issues, it would be beneficial for the ALJ to provide additional support for her credibility determination.

In analyzing Plaintiff's daily activities, the ALJ determined that Plaintiff's reports from March 2013 that she could take the bus, shop, and bend and reach without difficulty supported the determination that Plaintiff could perform a wide range of light work. R. 18. However, the ALJ failed to address Plaintiff's testimony that she accomplished her daily activities with the assistance of her son or aunt or

---

[5] The VE testified that if Plaintiff required the use of a cane for pain, not for balance, she would still be able to perform the cashier job, but not the cleaner/housekeeper or cafeteria attendant jobs. R. 72. The VE also testified that there are other light jobs that Plaintiff would be able to perform with the use of a cane, such as a machine tender and assembler positions that only require standing, not walking. R. 72-73. The ALJ did not rely on the last two jobs in her decision.

- 14 -

with frequent breaks due to pain. The ALJ rejected Plaintiff's reported need for frequent breaks but provided no explanation for this determination. R. 19. Additionally, Plaintiff reported that since May 2013, her impairments have gradually become more severe. R. 275. Plaintiff's assertions of pain should not have been summarily dismissed. *See also Stark v. Colvin*, 813 F.3d 684, 687-88 (7th Cir. 2016) (finding that objective evidence of plaintiff's pain included the use of prescription pain medication and "[t]estimony of severe pain cannot be disregarded simply because it is not supported by objective medical evidence").

The ALJ also questioned Plaintiff's complaints of drowsiness caused by her medications. The ALJ referenced Dr. Semerdjian's testimony that not all of Plaintiff's prescribed medications caused drowsiness and that obesity and perhaps an undiagnosed sleep disorder could be responsible. R. 18. The ALJ explained that drowsiness was not supported by the record because a test from November 2011 was negative for sleep apnea and Plaintiff's progress notes in general did not reflect any "significant complaints of sleepiness or fatigue that interferes with the claimant's daily routine." R. 18.

The ALJ failed to address the medical records where Plaintiff specifically reported drowsiness caused by her medications. *See* R. 443 ("gets sleepy w/ methocarbamol"); R. 449 ("gabapentin helps her pain but make[s] her sleepy"). Plaintiff's medical records also reveal frequent changes in her medications to manage her pain and possibly the side effects. *See, e.g.*, R. 443 (5/7/2013 - taking Methocarbamol and Gabapentin); R. 516 (1/29/2014 - started taking "Gralise

(Controlled-Release Gabapentin)titrate" instead of Gabapentin); R. 498 (8/28/2014 - not taking Methocarbamol or Gralise Starter); R. 493 (10/30/2014 - started Gabapentin); R. 528 (1/16/2015 - taking Gabapentin and Methocarbamol); R. 554 (3/2/2015 - increased Gabapentin); *see also Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("[W]e are skeptical that a claimant's failure to identify side effects undermines her credibility--after all, not everyone experiences side effects from a given medication, and some patients may not complain because the benefits of a particular drug outweigh its side effects."). Furthermore, even if all of Plaintiff's medications did not cause drowsiness, the few that did would be difficult to determine when Plaintiff was taking several medications daily and some up to four times a day. R. 39-40, 70, 443.

On remand, the ALJ should take the opportunity to resolve the issues identified above and properly evaluate the severity of Plaintiff's symptoms by applying the guidelines provided in Social Security Ruling 16-3p. SSR 16-3p, 2016 SSR LEXIS 4.

## IV. CONCLUSION

The Court finds that remand is required so that the ALJ may determine whether the VE's methodology and conclusions for her job numbers are reliable, which is a determination that the ALJ must make in the first instance. *See Mason*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19-20 (finding that the court cannot build a logical bridge on behalf of the ALJ). The Court expresses no opinion on the ultimate viability of Plaintiff's claim. The Court remands this case for the

VE to produce the information she relied on in determining her job numbers. Upon remand, the ALJ should also revisit her determination about Plaintiff's use of a cane and the intensity and persistence of Plaintiff's symptoms. Accordingly, Plaintiff's motion for summary judgment [10] is granted, and the Commissioner's motion [15] is denied. The decision of the ALJ is remanded for further proceedings consistent with this opinion.

Date: December 21, 2018   By: _____
Iain D. Johnston
United States Magistrate Judge